## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBIN CYNTHIA GRAY        *
1930 Saratoga Dr.        *
Adelphi, Maryland 20783        *
       *
And        *
       *
ALVIN CARL ADDISON        *
7817 Michele Dr.        *
Landover, Maryland 20785        *
       *
And        *
       *
STEVEN PAUL JOHNSON        *
1108 8th Street, NE        *     Case No.:
Washington DC, 20002        *
       *
And        *
       *
DEARELL CHARLIE BREVARD        *
7617 Haines Ct.        *
Laurel, Maryland 20707        *
       *
And        *
       *
ANDREW SAUNDERS        *
906 Clovis Ave.        *
Capital Heights, Maryland 20743        *
       *
And        *
       *
WARREN KENNETH TURNER        *
140 49th Street, SE Apt. #4        *
Washington DC, 20019        *
       *
***On Behalf of Themselves and***        *
***All Others Similarly situated***        *
       *
    PLAINTIFFS,        *
       *
v.        *
       *
       *
       *

SCOPE SERVICES, INC.                                    *
2095 Niles Road                                        *
St. Joseph, MI 49085                                   *
                                                       *
     Serve:  CT Corporation System    *
     1015 15th Street, NW             *
     Suite 1000                       *
     Washington, DC 20005             *
                                                       *
DEFENDANT.                                             *
************************************************************************

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Robin Cynthia Gray ("Gray"), Alvin Carl Addison ("Addison"), Steven Paul Johnson ("Johnson"),   Dearell Charlie Brevard ("Brevard"), Andrew Saunders (Saunders), and Warren Kenneth Turner ("Turner") (together, "Plaintiffs"), by and through undersigned counsel, hereby submit their Complaint against Defendant Scope Services, Inc. ("Defendant") to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq.* ("DCMWA"), the D.C. Wage Payment and Wage Collection Act, D.C. Code §§ 32-1301 *et seq.* ("DCWPA"), the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.* (hereinafter "MWHL"), and the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment Article §§ 3-501 *et seq.* (hereinafter "MWPCL"), as set forth below.

## PARTIES AND JURISDICTION

1.    Plaintiffs are adult residents of the State of Maryland and the District of Columbia.  By acting as the named Plaintiffs in this action, Plaintiffs hereby affirm their consent to participate as Plaintiffs in a Collective Action under the FLSA and DCMWA.

2

2.     Defendant is a corporation formed under the laws of Michigan.  At all times relevant to this action, Defendant operated substantially and continuously in Maryland and the District of Columbia.

3.     At all times relevant to this action, Defendant employed Plaintiffs to perform electricity meter technician job duties at residences in the District of Columbia and the state of Maryland.

4.     During Plaintiffs' employment, Defendant was engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

5.     At all times relevant, Defendant had gross revenues exceeding $500,000.00 and otherwise qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

6.     At all times relevant, Plaintiffs were each individual employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

7.     This Court has jurisdiction over Defendant pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any act of Congress regulating commerce."  Subject matter jurisdiction is invoked under 28 U.S.C. § 1331 (Federal Question).  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## COLLECTIVE ACTION ALLEGATIONS

8.     Plaintiffs seek to prosecute their FLSA and DCMWA claims as a collective action on behalf of all persons Defendant has employed and continues to

employ as "Supervisors" at any time since October 9, 2011 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA, who were not paid overtime compensation at rates not less than one and one-half (1½) times the regular rate of pay for hours worked in excess of forty (40) per workweek, and whose overall annual compensation were less than $100,000 (the "Collective Action Members").

9.     The number of Collective Action Members is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within the sole control of the Defendant, upon information and belief, approximately twenty-five (25) or more Collective Action Members exist during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

10.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that are experienced and competent in the fields of employment law and collective and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with that of the Collective Action Members.

11.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. No difficulty exists in the management of this action as a

collective action.

12.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all Collective Action Members.  Among the questions of law and fact common to Plaintiffs and other Collective Action Members are:

a.     whether Defendant employed the Collective Action Members within the meaning of the FLSA and DCMWA;

b.     whether Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.     whether Defendant failed to post or keep posted a notice explaining minimum and/or overtime pay rights provided by the FLSA and DCMWA in any area where Plaintiffs and the Collective Action Members were employed;

d.     what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

e.     whether Defendant failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek, violating the FLSA the DCMWA and the regulations promulgated thereunder;

f.     whether Defendant misclassified the Collective Action Members as exempt from overtime;

g.    whether Defendant's violations of the FLSA and DCMWA are willful as that term is used within the context of the FLSA and DCMWA;

h.    whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory and statutory damages, interest, costs and disbursements, and reasonable attorneys' fees;

i.    whether the statute of limitations should be equitably tolled due to Defendant's statutory violations, or whether Defendant should be estopped from raising such defense.

## FACTS

### (i)    Robin Cynthia Gray

13.    Gray was employed by Defendant from April 2011 through about May 2013, and from August 2013 through the time of this filing (approximately 173 weeks).

14.    From about June of 2012 through December of 2012, Gray was classified as a Supervisor and paid $20.00 per hour.  Gray received a raise to $21.00 per hour for the month of December, 2012.

15.    While classified as a Supervisor, Gray worked for Defendant as a full time employee.

16.    Though Gray was classified as a supervisor, she was a supervisor in name only.  Gray's responsibilities as a Supervisor included going into the field and installing electricity meters, rewiring electricity meters, installing fuses, and changing adapters.

17.    The only quasi-supervisory duties Gray was responsible for was handing out assignments, handheld radios, and toolboxes in the morning each day.  These duties

took less than one hour of Gray's workday.

18.     While she was classified as a Supervisor, Defendant allowed Gray to typically and customarily work about fifty-two and one half (52.5) to sixty and one half (60.5) or more hours per week.

19.     While she was classified as a Supervisor, Defendant failed to pay Gray any wages for all overtime hours (hours worked over forty per week) Gray worked.

**(ii)    Alvin Carl Addison**

20.     Addison was employed by Defendants from 2010 through October 2012, and from August 2013 through the time of this filing (approximately 207 weeks).

21.     From about October of 2011 through October of 2012 Addison was classified as a Supervisor and paid $19.00 an hour.

22.     While he was classified as a Supervisor, Addison worked for Defendant as a full time employee.

23.     While classified as a Supervisor, Addison was a supervisor in name only. Addison's main responsibility as a Supervisor was going into the field and installing new electricity meters.

24.     The only quasi-supervisory duties Addison was responsible for was handing out assignments to other technicians in the morning and helping other technicians with any issues in the field for approximately one hour a day.

25.     While he was classified as a Supervisor, Defendant allowed Addison to typically and customarily work about sixty and one half (60.5) or more hours per week.

26.     While he was classified as a Supervisor, Defendant failed to pay Addison any wages for all overtime hours (hours worked over forty per week) Addison worked.

(iii)   **Steven Paul Johnson**

27.    Johnson was employed by Defendants from 2011 through 2012, and from January of 2013 through the time of this filing (approximately 142 weeks).

28.    From about January of 2013 through July of 2013, Johnson was classified as a supervisor and paid $17.00 an hour.

29.    While classified as a Supervisor, Johnson worked for Defendant as a full time employee.

30.    While classified as a Supervisor, Johnson was a supervisor in name only. Johnson's main responsibility as a Supervisor was dispatching jobs to technicians in the field.

31.    The only supervisory duties Johnson was responsible for running a 15-20 minute safety meeting every morning.

32.    During the relevant time period, Defendant allowed Johnson to typically and customarily work about forty seven and one half (47.5) or more hours per week.

33.    While he was classified as a Supervisor, Defendant failed to pay Johnson any wages for all overtime hours (hours worked over forty per week) Johnson worked.

(iv)   **Dearell Charlie Brevard**

34.    Brevard was employed by Defendants from June 2007 through November 2012, (approximately 281 weeks).

35.    From about 2009 through November of 2012, Brevard was classified as a supervisor and paid $18.00 an hour.

36.    While classified as a Supervisor, Brevard worked for Defendant as a full time employee.

37.     While classified as a Supervisor, Brevard was a supervisor in name only. Brevard's main responsibilities as a Supervisor were serving as a dispatcher for incoming assignments and going into the field and installing new electricity meters.

38.     The only quasi-supervisory duties Brevard was responsible for was running the morning staff meeting, which typically lasted less than 30 minutes.  Brevard, however, did not have discretion as to the information disseminated during the meeting.

39.     During the relevant time period, Defendant allowed Brevard to typically and customarily work about fifty five (55) or more hours per week.

40.     While he was classified as a Supervisor, Defendant failed to pay Brevard any wages for all overtime hours (hours worked over forty per week) Brevard worked.

**(v)    Andrew Saunders**

41.     Saunders was employed by Defendants from about June 2010 through December 2012, (approximately 129 weeks).

42.     From about January 2012 through December of 2012, Saunders was classified as a supervisor and a bi-weekly salary of $1,731.00.

43.     While Saunders was classified as a supervisor, he worked for Defendant as a full time employee.

44.     Though Saunders was classified as a supervisor from January to December of 2012, he was a supervisor in name only.  Saunders' main responsibilities as a Supervisor were leading the daily safety meetings and teaching new technicians how to read and install meters.  All of the topics and curriculum were chosen by Defendant. Saunders had no discretion as to what he could teach.

45.     Further, more than half of Saunders' time was spent in the field.

9

46.     During the relevant time period, Defendant allowed Brevard to typically and customarily work about sixty three (63) or more hours per week.

47.     While he was classified as a Supervisor, Defendant failed to pay any wages for all overtime hours (hours worked over forty per week) Saunders worked.

**(vi)   <u>Warren Kenneth Turner</u>**

48.     Turner was employed by Defendants from July of 2012 through September 8, 2014, (approximately 110 weeks).

49.     From about December of 2012 through September 8, 2014, Turner was classified as a supervisor and paid $17.00 an hour.

50.     While classified as a supervisor, Turner worked for Defendant as a full time employee.

51.     Though Turner was classified as a supervisor from December of 2012 through September 8, 2014, he was a supervisor in name only.   Turner's main responsibility as a Supervisor was going into the field to make sure the technicians were following Scope protocol.

52.     Turner also handed out the assignments to technicians and inspected the equipment and vehicles.  These tasks took less than an hour each day.

53.     During the relevant time period, Defendant allowed Brevard to typically and customarily work about forty four (44) or more hours per week.

54.     While he was classified as a Supervisor, Defendant failed to pay Turner any wages for all overtime hours (hours worked over forty per week) Turner worked.

Saunders

55.     The maximum-hours provision of the FLSA requires employers to pay any employee who is covered by the Act "not less than one and one-half times the *regular rate* at which he is employed" for all hours worked in excess of forty in a week. 29 U.S.C. § 207(a)(1) (emphasis supplied).

56.     According to Department of Labor regulations and Supreme Court precedent, the "regular rate" of pay for FLSA purposes is an "actual fact" that "must be drawn from what happens under the employment contract," rather than from any agreement between the employer and employee. 29 C.F.R. § 778.108. "Once the parties have decided upon the amount of wages and the mode of payment[,] the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary, 'regular rate' in [a] wage contract [ ]." *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424-25 (1945).

57.     Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act *if* the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, *and if* he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 58 (D.D.C. 2006).

58.     At no time during the period of Plaintiffs' employment as Supervisors did Plaintiffs and Defendant reach, or even engage in any discussions relating to, a clear and

mutual understanding that Plaintiffs' salary was intended to compensate Plaintiff at a regular non-overtime rate of pay for hours worked each week up to 40 hours and at an overtime rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for hours worked each week in excess of forty (40).

59.     At no time during the period of Plaintiffs' employment as Supervisors did Defendant pay, in addition to Plaintiff's flat salary or hourly rate, extra wages to Plaintiffs for overtime hours worked in excess of forty (40) at a rate not less than one-half Plaintiffs' regular rate of pay.

60.     In truth, while employed as Supervisors, Defendant paid Plaintiffs their flat salary or hourly rate for 40 hours worked each week and paid Plaintiffs no wages at all for hours worked each week in excess of 40.

61.     Defendant should have paid Plaintiffs at the rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for all hours worked each week in excess of 40.

62.     At no time during Plaintiffs' employment as Supervisors did Plaintiffs perform work duties that would make them exempt from the overtime requirements of the FLSA or DCMWA.

63.     The FLSA and DCMWA provide for a three (3) year statute of limitations on Plaintiffs' overtime claim.

64.     Employers who violate the FLSA and DCMWA overtime provisions are ordinarily "liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

65.   The award of liquidated damages is mandatory unless "the employer shows to the satisfaction of the court that the act or omission giving rise [to the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

66.   The good faith defense to liquidated damages requires "an affirmative showing of a genuine attempt to ascertain what the law requires," and not simply the absence of bad faith. *Danesh v. Rite Aid Corp.*, 39 F.Supp.2d 7, 13 (D.D.C.1999) (citation omitted).

67.   Here, Defendant's failure to pay Plaintiffs wages as required by Federal Law, Maryland law, and District of Columbia law was not the product of good faith and Defendant had no reasonable grounds for believing its failure to pay Plaintiffs overtime compensation at the legal rate was in compliance with Federal, Maryland, or District of Columbia law.

68.   Defendant cannot meet its burden of an affirmative showing to avoid the imposition of liquidated damages.  As such, in addition to their unpaid wages, Plaintiffs are entitled to liquidated damages in an amount equal to her unpaid wages.

## CAUSES OF ACTION

### COUNT I
**Violation of Federal Fair Labor Standards Act**
**(Overtime)**

69.   Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

70.   The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half (1½) times the employee's regular rate of pay

for all overtime hours worked each week in excess of forty (40).

71.    At all times, Plaintiffs were "employees" covered by the FLSA, 29 U.S.C.
§ 207(a)(1), and the Defendant was Plaintiffs' "employer" under FLSA, 29 U.S.C. §
207(a)(2).

72.    Defendant, as Plaintiffs' employer, was obligated to compensate Plaintiffs
at the overtime rate of one-and-one-half (1½) times Plaintiffs' regular rate for all hours
worked per week in excess of forty (40).

73.    As set forth above, while in Defendant's employ, Plaintiffs worked many
overtime hours each week.

74.    As set forth above, Defendant failed and refused to pay Plaintiffs required
wages for all overtime hours worked each week in excess of forty (40).

75.    Defendant's failure and refusal to pay Plaintiffs as required by the FLSA
was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiffs under Count I for all unpaid
overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated
damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of
this action, and any other and further relief this Court deems appropriate.

### COUNT II
**Violation of D.C. Minimum Wage Act Revision Act of 1992
(Overtime)**

76.    Plaintiffs reallege and reassert each and every allegation set forth above as
if each were set forth herein.

77.    Plaintiffs were Defendant's "employees," and Defendant was Plaintiffs'
"employer" within the meaning of the DCMWA, D.C. Code §§ 32-1001 *et seq*.

78.     Defendant, as Plaintiffs' employer under the DCMWA, was obligated to compensate Plaintiffs at the overtime rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for all hours worked per week in excess of forty (40).

79.     As set forth above, while in Defendant's employ, Plaintiffs worked many overtime hours.

80.     As set forth above, Defendant failed to compensate Plaintiffs wages as required by the DCMWA for overtime hours worked in excess of forty (40).

81.     Defendant's failure to pay Plaintiffs as required by the DCMWA was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiffs under Count II, for all unpaid wages in such an amount to be proven at trial, plus liquidated damages in an equal amount, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT III
### Violation of D.C. Wage Payment and Wage Collection Act

82.     Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

83.     During Plaintiffs' period of employ, Plaintiffs performed a substantial portion of their job duties for Defendant in the District of Columbia.

84.     Plaintiffs were "employees," and Defendant was Plaintiffs' "employer" within the meaning of the DCWPA.

85.     Under the DCWPA, Defendant, as Plaintiff's employer, was obligated to pay Plaintiffs all wages for work that Plaintiffs performed.

86.     "Wages" pursuant to DCWPA (DC Code § 32–1301(3)), "includes a: (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) Pursuant to District or federal law."

87.     Plaintiffs worked many hours for Defendant in the District of Columbia for which Defendant failed to timely pay Plaintiffs all wages required for hours worked per week in excess of forty (40).

88.     Defendant owes Plaintiffs back wages equal to the District of Columbia and federally required rates Plaintiffs' were required to be paid for hours worked in excess of forty (40).

89.     Defendant's failure to pay Plaintiffs all guaranteed wages on time or at or before the end of Plaintiffs' employment with Defendant as required by the DCWPA was willful and intentional, was not the result of any *bona fide* dispute between Plaintiffs and Defendant, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiffs under Count III, for all unpaid wages in such amounts to be proven at trial, plus an additional three times (3x) all unpaid wages as liquidated damages, interest (both pre- and post-judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT IV
### Violation of Maryland Wage and Hour Law

90.     Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

16

91.     Plaintiffs are "employees" and Defendant is Plaintiffs' "employer" within the meaning of the MWHL.

92.     As Plaintiffs' "employer," Defendant was obligated to pay Plaintiffs at the rate of one-and-one-half (1½) times Plaintiffs' regular rate of pay for hours worked each week in excess of forty (40) as required by the MWHL.

93.     While in Defendant's employ, Plaintiffs worked many overtime hours while working as Supervisors but were not properly compensated by Defendant for those overtime hours worked.

94.     Overtime pay is due and owing to Plaintiffs under the MWHL.

95.     Defendant's failure to pay Plaintiffs for overtime hours worked as required by the MWHL was willful and intentional, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiffs under Count IV for unpaid overtime wages in such amounts as are proven at trial, plus an equal amount as liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT V
**(Violation of the Maryland Wage Payment and Wage Collection Law)**

96.     Plaintiffs reallege and reassert each and every allegation set forth above as if each were set forth herein.

97.     Plaintiffs were "employees," and Defendant was Plaintiffs' "employer" within the meaning of the MWPCL.

98.     Under MWPCL, Defendant, as Plaintiffs' employer, was obligated to pay Plaintiffs all wages due on time and when wages were due for work that Plaintiffs performed.

99.     Under the MWPCL, "Wage" means all compensation that is due to an employee for employment and specifically includes: (i) a bonus; (ii) a commission; (iii) a fringe benefit; (iv) <u>overtime wages</u>; or (v) any other remuneration promised for service. (emphasis supplied).

100.    Without legal excuse or justification, Defendant withheld wages due to Plaintiffs for overtime work duties performed while Plaintiffs were Supervisors as described above.

101.    Defendant withheld timely payment of wages to Plaintiffs without Plaintiffs' permission and without any other justification recognized or otherwise allowed by the MWPCL.

102.    Defendant's unlawful and unauthorized withholding of Plaintiffs' wages constitutes a failure by Defendant to pay Plaintiffs all wages due on time and as required for work performed as mandated by the MWPCL.

103.    Defendant's failure to pay Plaintiffs all wages due for work performed was willful and intentional, was not the result of any *bona fide* dispute between Plaintiffs and Defendant, and was not in good faith.

WHEREFORE, Defendant is liable to Plaintiffs under Count V, for all unpaid wages in such amounts to be proven at trial, plus three (3x) times the amount of unpaid and/or improperly deducted wages as additional damages, interest (both pre- and post-judgment), attorney's fees, costs, and any other further relief this Court deems appropriate.

Respectfully submitted,

Gregg C. Greenberg, Bar No. MD17291
Jason D. Friedman, Bar No.: MD18898
Zipin, Amster & Greenberg, LLC
836 Bonifant Street
Silver Spring, Maryland 20910
(301) 587-9373 (phone)
(301) 587-9397 (fax)
Email: ggreenberg@zagfirm.com
          jfriedman@zagfirm.com

*Counsel for Plaintiffs*